IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD MILLS,                          :
                                        :
            Petitioner,                 :
                                        :
      v.                                :      1:14-cv-01693
                                        :
THERESA DELBALSO, et al.                :      Hon. John E. Jones III
                                        :
            Respondents.                :

**<u>MEMORANDUM</u>**

**February 24, 2015**

Petitioner Richard Mills has filed a petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  (Doc. 1).  He challenges a conviction by guilty plea
and sentence imposed by the Court of Common Pleas of Luzerne County,
Pennsylvania.  <u>Id.</u>  In his petition, Mills raises four grounds for relief: (1) counsel
during Mills' preliminary hearing was ineffective; (2) his first Post Conviction
Relief Act ("PCRA") counsel was ineffective; (3) his second PCRA counsel was
ineffective; and (4) the prosecutor committed prosecutorial misconduct.  <u>Id.</u>

In accordance with <u>United States v. Miller</u>, 197 F.3d 644 (3d Cir. 1999), and
<u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000), this Court issued formal notice to
Mills that he could either have the petition ruled on as filed but lose his ability to
file a second or successive petition, or withdraw his petition and file one all-
inclusive § 2254 petition within the one-year statutory period prescribed by the

Antiterrorism Effective Death Penalty Act ("AEDPA").  (Doc. 3).  On September

15, 2014, Mills returned the notice of election, indicating that he wished to proceed

with his petition for writ of habeas corpus as filed.  (Doc. 4).  On November 5,

2014, the Respondents filed a response to Mills' habeas petition.  (Doc. 12).  Mills

filed a traverse on December 5, 2014, rendering this matter ripe for disposition.

(Doc. 17).  For the reasons set forth below, the petition is denied in part and

dismissed in part.

## I.    <u>Statement of Relevant Facts</u>

On May 8, 2009, Mills' preliminary hearing was held relating to multiple

offenses; at the conclusion of the hearing, all charges were bound over for trial

with the exception of one firearm charge that the prosecutor withdrew.  (Doc. 12,

Att. 1).  On August 19, 2009, Mills pleaded guilty to multiple charges related to

criminal information number 4654 of 2008 and numbers 1756, 1758, and 1758 of

2009.  <u>Id.</u> at Att. 2.   Specifically, Mills pleaded guilty to escape, intimidation of a

witness, criminal solicitation, aggravated assault, resisting arrest, flight to avoid

apprehension, burglary, possession of firearm prohibited, and firearms not to be

carried without a license.  <u>Id.</u> at Att. 6.

On December 8, 2009, Mills filed a <u>pro se</u> PCRA Petition.  <u>Id.</u> at Att. 4, p. 5.

On November 9, 2012, after holding four hearings in the matter, the PCRA Court

denied Mills' petition on the merits.  <u>Id.</u>  On December 7, 2012, Mills filed an

appeal with the Pennsylvania Superior Court.  (Id. at Att. 5).  The Superior Court denied Mills' appeal, concluding that his PCRA petition had not been filed in a timely manner.  Id.

### A. Preliminary Hearing

At the preliminary hearing, Deputy Jennifer Roberts of the Luzerne County Sheriff's Department was called to testify regarding the events that led to Mills' arrest.  (Doc. 12, Att. 1, p. 19).  Deputy Roberts testified that on December 5, 2008, she received several anonymous phone calls providing the general location of Mills, who was at that time wanted for escape from the Luzerne County Correctional Facility.  Id. at 21-22.  The following day, an anonymous tip informed Deputy Roberts that Mills was staying at a residence owned by Nicole Kastner.  Id. at 23.  On December 7, 2008, an anonymous caller identified Mills as a passenger in a blue pickup truck owned by Hugh Thomas Dunn.  Id. at 23-24.

Deputy Roberts located and spoke with Mr. Dunn, who confirmed that he had driven Mills to two locations before dropping him off in the 300 block area of McLean Street in Wilkes Barre.  Id. at 25-26.  Deputy Roberts then related that at approximately 8:41 p.m. that evening, she received a call from Mr. Dunn about an urgent matter.  Id. at 26.  Deputy Mills and several other officers met with Mr. Dunn behind a Home Depot in Wilkes Barre.  Id.  According to Deputy Roberts, at that meeting Mr. Dunn immediately informed the officers that "he did not want to

see any police officers get shot over Mills[,]" and therefore produced a blue satchel canvas bag containing a .22 caliber revolver that Mills had given him in October 2008.  Id. at 26-27.

Deputy Roberts testified that Mr. Dunn informed her that he had picked up Mills at approximately 11 p.m. on December 6, 2008.  Id. at 27.  Mr. Dunn stated that he picked up Mills at a trailer in Exeter.  Id.  Mills brought a black suitcase into the truck with him and, while Mr. Dunn was driving, Mills revealed the contents of that suitcase.  Id. at 28.  Deputy Roberts testified that Mr. Dunn saw "numerous handguns" inside that suitcase, which Mills stated he had obtained from burglarizing a building in Exeter.  Id.  At that point in the meeting, Deputy Roberts received a radio transmission from Sheriff Savokinas, who was conducting surveillance on a house at 64 Anthracite Street.  Id. at 30.  Sheriff Savokinas was in a physical altercation with Mills and requested help.  Id.

After arriving on scene at Anthracite Street, Deputy Roberts transported Mills to the sheriff's station for questioning.  Id. at 31.  Thereafter, she proceeded to a home at 40 Luzerne Street where Mills was reportedly living.  Id.  A search of the property revealed, among other things, a handgun, tools later identified as those stolen from a business in Exeter, and Mills' Pennsylvania ID card.  Id. at 31-32.  On cross-examination, Deputy Roberts admitted that Mr. Dunn made no mention of a handgun at their first meeting, but Mr. Dunn had explained that he was

nervous and reluctant to talk to the police because he was afraid of Mills.  Id. at 36, 40.

Thereafter, Mr. Dunn was called to testify.  Id. at 69.  Mr. Dunn stated that he had known Mills for a long time and, on the evening of December 6, 2008, he picked Mills up from a trailer park in Exeter.  Id. at 70.  Mills brought a black suitcase into the truck with him.  Id. at 71.  Mr. Dunn stated that, as he was driving, Mills unzipped the suitcase and "started pulling guns out in cases."  Id. at 71-72.  After Mills removed four to five guns from the suitcase, he explained that he had taken the guns from a pallet company in Exeter.  Id. at 73.

On cross-examination, Mr. Dunn testified that Mills had given him a pistol approximately one month "prior to all this."  Id. at 80.  The pistol was behind the seat in Mr. Dunn's truck, but he did not give it to police during his first encounter with them.  Id.  Mr. Dunn later drove to Home Depot to meet with officers regarding the weapon.  Id. at 82.  He parked behind the Home Depot and got into one of the officer's cars.  Id.  Mr. Dunn testified that he did not give the revolver to police at that point in time, but instead after the meeting drove immediately to give the revolver back to Mills.  Id. at 83-84.  When Mr. Dunn arrived at Mills' place of residence, police were already there and he handed over the revolver at that point in time.  Id. at 84.

### B. PCRA Hearings

1. *First PCRA Hearing*

On July 7, 2011, the first of Mills' PCRA hearings was held.  (Doc. 12, Att. 3).  Mills testified that he believed his pretrial counsel, Mr. William Watt, had been ineffective for failing to obtain discovery until the day before the plea hearing, and for failing to provide Mills with discovery to review prior to the plea hearing.  Id. at 17.  Mills testified that, had Mr. Watt reviewed the discovery material, he would have realized that Mr. Dunn, Deputy Roberts, and the prosecutor had committed perjury at the preliminary hearing.  Id. at 25.  Mills further alleged that a Brady violation had occurred when the prosecution failed to reveal the fact that Mr. Dunn had not been charged with a crime for possessing a weapon.  Id. at 29.  Finally, Mills alleged that his counsel had been ineffective for allowing perjured testimony "to go unchallenged" at the preliminary hearing.  Id. at 30.

Mills' pretrial attorney Mr. Watt was also called to testify.  Id. at 73.  Mr. Watt testified that, although the defense is not entitled to discovery at the preliminary hearing, he had obtained Mr. Dunn's criminal background information for that he "could fully cross-examine [Mr. Dunn] on any [criminal] charges he had in the past."  Id. at 75-76.  Furthermore, Mr. Watt had cross-examined every prosecution witness.  Id. at 76.  After Mills was arraigned, Mr. Watt immediately filed for discovery and received everything the prosecutor had in her possession.  Id. at 78.

6

Mr. Watt testified that he received discovery in the beginning of August and reviewed it, although not in depth as he was preparing for another trial at that time. Id. at 78-79.  Mr. Watt filed a motion for an extension of time, which was granted. Id. at 79.  Mr. Watt stated that, upon reviewing discovery, nothing appeared falsified although "there were credibility issues that would go to the weight of the testimony at trial[.]"  Id.

After receiving discovery, the district attorney's office engaged in plea discussions with Mr. Watt, and offered a comprehensive agreement that would result in a sentence of six to twelve years imprisonment.  Id. at 80.  Mr. Watt discussed with Mills that fact that some of the charges would be very difficult to defend, and the total sentence if convicted could be "enormous[.]"  Id. at 80-81. After presenting the plea offer to Mills, Mills "basically jumped out of his chair, he was ecstatic, he was thrilled. He couldn't thank me enough."  Id. at 81.  Mills requested that the plea agreement take place as soon as possible, so Mr. Watt arranged for the Court to conduct a plea hearing the next day.  Id. at 81-82.

During cross-examination, Mr. Watt testified that he had brought discovery to share with Mills on the day they discussed the plea offer, but he was unable to bring it into the prison because the file contained staples.  Id. at 88.  Although Mills never requested to see the discovery file, Mr. Watt gave the discovery to him the day of the plea hearing.  Id.  Mr. Watt testified that Mills was unable to review

the discovery, but "it was at his request that the plea happened quickly." Id. at 88-89.  Mr. Watt reiterated that he and Mills agreed that there were some credibility issues with certain witnesses, particularly in regards to the testimony of Mr. Dunn.  Id. at 89.  While Mills believed that slight differences between Mr. Dunn's testimony and police testimony meant the district attorney had engaged in misconduct, Mr. Watt explained that "the majority of what [Mills] was talking about went to the credibility of Mr. Dunn[.]" Id. at 89-90.

### 2. *Second PCRA Hearing*

After a continuance to subpoena additional witnesses, on November 30, 2011, Mills' second PCRA hearing was conducted.  (Doc. 12, Att. 3, Ex. A).  At that hearing, Mills' PCRA counsel called Deputy Courtney Staley to testify.  Id. at 27.  Deputy Staley was the affiant in the cases against Mills and was a part of the investigating team.  Id. at 27-28.  He testified that Mr. Dunn had turned over a revolver to the police behind a Home Depot.  Id. at 28.  After the revolver was turned over to the police, Mr. Dunn was asked to come to the scene where Mills was being apprehended.  Id. at 31.  There, police took Mr. Dunn into custody in order to "protect him as a confidential informant." Id.  Deputy Staley acknowledged that Mr. Dunn had stated that he was returning the revolver to Mills, but Deputy Staley stated "I don't know why he said that." Id. at 32.

Deputy Staley acknowledged that, although Mr. Dunn was in possession of a firearm that he was not allowed to carry, he was not charged with a crime.  Id. at 40.  He explained that "in view of the fact that [Mr. Dunn] came to us with . . . information, he didn't have to do that, I guess for lack of a better phrase, he was given a courtesy."  Id. at 40-41.  However, Deputy Staley stated that, to the best of his knowledge, there was no agreement not to charge Mr. Dunn with a crime; the decision was entirely police discretion and was not communicated to the district attorney's office.  Id. at 46-47.

### 3. *Third PCRA Hearing*

Mills' third PCRA hearing was held on April 17, 2012.  (Doc. 12, Att. 3, Ex. B).  Although Deputy Roberts was subpoenaed and arrived to testify, Mr. Galante asked for a continuance because the Sheriff's Office had given him a large investigative file that morning and he needed "time to go through that as well prior to questioning Miss Roberts."  Id. at 17.  Consequently, the Court granted a continuance and scheduled an additional hearing.  Id.

### 4. *Fourth PCRA Hearing*

Mills' fourth and final PCRA hearing was held on June 27, 2012.  (Doc. 12, Att. 3, Ex. C).  At the hearing, Deputy Roberts[1] was called to testify.  Id. at 6.

---

[1] At the time of the fourth PCRA hearing, Jennifer Roberts was no longer employed by the sheriff's department.  For the purpose of consistency and simplicity, she will continue to be referred to as Deputy Roberts.

Deputy Roberts testified that, on the evening of December 7, 2008, she and several other officers had met Mr. Dunn behind a Home Depot.  Id. at 14-15.  Deputy Roberts related that, at the time of the meeting, Mr. Dunn was "reluctant to talk" to the police for fear of retaliation from Mills.  Id. at 15.  However, Mr. Dunn had brought a small, blue canvas bag with him to the meeting, and informed the police that Mills had given him the bag.  Id. at 15-16.  The bag contained a .22 caliber revolver.  Id. at 16.

Deputy Roberts testified that they took the revolver from Mr. Dunn at their meeting behind the Home Depot.  Id. at 22.  Despite Mr. Dunn's statement to the contrary, Deputy Roberts asserted that "we are not going to give a gun back to somebody we don't know. The gun was taken out of the bag, he was given back the blue bag and was told to take the blue bag and pretend [he was] returning it back to Mr. Mills."  Id.  Deputy Roberts asserted that the revolver was in police possession "the entire time" after the Home Depot meeting.  Id.  When pressed as to why she had not testified to this previous, Deputy Roberts stated that she had not been asked that question previously.  Id. at 23.  The information also was not contained within her incident report because "[a]n incident report is not for every specific part of information in the case."  Id.

Deputy Roberts testified that she had not arrested Mr. Dunn for possession of the revolver because of "officer discretion."  Id. at 27.  Furthermore, Deputy

Roberts could not recall contacting the district attorney's office to inform them that she had exercised her discretion not to charge Mr. Dunn, and could not recall ever being contact by the district attorney's office to inquire whether she had charged Mr. Dunn with a crime.  Id. at 28.

## II.   **Discussion**

Under the AEDPA, "federal courts are to review a state court's determinations on the merits only to ascertain whether the state court reached a decision that was 'contrary to' or involved an 'unreasonable application' of clearly established Supreme Court law, or if a decision was based on an 'unreasonable determination' of the facts in light of the evidence presented."  Fahy v. Horn, 516 F.3d 169, 189 n. 20 (3d Cir. 2008) (citing, 28 U.S.C. § 2254(d)).

However, where a state court has not reached a decision based upon the merits of a claim, the deferential standards of the AEDPA do not apply and a federal court "must conduct a de novo review over pure legal questions and mixed questions of law and fact[.]"  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).  In these circumstances, "the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence."  Id. (citing 28 U.S.C. 2254(e)(1)).  Where a PCRA court reaches a determination on the merits, but a state appellate court affirms on purely procedural grounds, the PCRA court's substantive determination is stripped of its preclusive effect, and there has

been "no 'adjudication on the merits'" for AEDPA purposes.  Thomas v. Horn,

570 F.3d 105, 115 (3d Cir. 2009) (citations omitted).

In this instance, the PCRA court considered Mills' petition and denied it on

the merits.  (Doc. 1, Att. 1, pp. 24-31).  On November 14, 2013, the Pennsylvania

Superior Court affirmed the PCRA Court's decision on purely procedural grounds,

concluding that Mills' PCRA petition was "patently untimely" and therefore could

not be considered on the merits.  Id. at 38-48.

The decision of the Pennsylvania Superior Court "stripped the PCRA court's

substantive determination . . . of preclusive effect" and, consequently, for AEDPA

purposes there was no adjudication on the merits of Mills' claim.[2]  Thomas, 570

F.3d at 115.  Claims of ineffective assistance of counsel present a mixed question

of law and fact, Berryman v. Morton, 100 F.3d 1089, 1095 (3d Cir. 1996), as do

claims of prosecutorial misconduct.  E.g., United States v. Reyes, 660 F.3d 454,

461 (9th Cir. 2011).  Therefore this Court must conduct a de novo review of Mills'

habeas petition.  Appel, 250 F.3d at 210.

**A. Prosecutorial Misconduct**

---

[2] The Superior Court's determination that Mills' PCRA application was untimely does not divest this Court of jurisdiction over Mills' habeas petition.  Mills' PCRA petition was filed within the PCRA statute of limitations on December 8, 2009, less than three months after judgment of his sentence became final.  (Doc. 12, Att. 4, p. 5).  As Respondents concede in their reply brief, the Superior Court decision to the contrary was plainly erroneous.  Therefore, the PCRA proceedings tolled the statute of limitations for habeas review, and Mills' petition is properly before this Court.

Mills alleges that the prosecutor in his case committed three separate constitutional violations under the broader title of "prosecutorial misconduct." (Doc. 1).  First, he alleges that the prosecutor used false and perjured testimony at the preliminary hearing in order to have the charges bound over for trial.  Id. Second, Mills contends that the prosecution lied to the trial court regarding a firearm charge and the reason for withdrawing that charge.  Id.  Third, Mills argues that the prosecution withheld Brady material.[3]  Id.

### 1. *Preliminary Hearing Testimony*

A criminal conviction may violate an individual's due process rights if the conviction is "obtained through use of false evidence," or if the State allows false evidence "to go uncorrected when it appears."  Napue v. Illinois, 360 U.S. 264, 269 (1959).  Thus, a due process violation occurs where: (1) a witness commits perjury, (2) the government knew or should have known of the perjury, (3) the perjury went uncorrected, and (4) there is a reasonable likelihood that the false testimony contributed to a guilty verdict.  United States v. Hoffecker, 530 F.3d

---

[3] Mills also argues that his procedural due process rights were violated when the prosecution brought up Mills' "previous criminal file when [he] had not offered any testimony during the preliminary hearing." (Doc. 1). The record reflects that the prosecutor asked Deputy Roberts at the preliminary hearing if she was "aware if Mr. Mills had a conviction that would prohibit him from possessing or transferring a firearm under Section 6105 of the Pennsylvania Crimes Code?" (Doc. 12, Att. 1, p. 33). As Mills' felony conviction was a necessary element of the firearm violation, the prosecution was entitled to admit evidence of that past conviction. E.g., Old Chief v. United States, 519 U.S. 172, 174 (1997).

137, 183 (3d Cir. 2008) (citing <u>Lambert v. Blackwell</u>, 387 F.3d 210, 242 (3d Cir. 2004)).

Although perjured testimony may result in a due process violation, not all inconsistent testimony constitutes perjury. As the Third Circuit has noted, "[d]iscrepancy is not enough to prove perjury. There are many reasons testimony may be inconsistent; perjury is only one possible reason." <u>Lambert</u>, 387 F.3d at 249. Rather, testimony is perjured when a witness "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." <u>United States v. Dunnigan</u>, 507 U.S. 87, 94 (1993).

Here, Mills alleges that the prosecution used false and perjured testimony at the preliminary hearing. (Doc. 1). Specifically, Mills points out that all police officers involved in the case stated that Mr. Dunn had turned over the revolver to them during a meeting behind Home Depot. <u>Id.</u> In contrast, Mr. Dunn himself testified that he did not turn over the revolver to the police at Home Depot. <u>Id.</u> Rather, he testified that he kept the revolver, and it was confiscated when police detained Mr. Dunn as he was attempting to return the revolver to Mills. <u>Id.</u>

Mills' claim fails for two reasons. First, there is no evidence that the witnesses committed perjury. Every police officer who testified provided similar statements regarding how and when the revolver was obtained from Mr. Dunn. At

the preliminary hearing, Deputy Roberts testified that Mr. Dunn had met her behind Home Depot and related his concern about Mills shooting a police officer. (Doc. 12, Att. 1, p. 26-27).  Therefore, Mr. Dunn turned over the revolver in question at that time.  Id.

At the Second PCRA hearing, Deputy Staley likewise testified that Mr. Dunn had turned over the revolver to police at the meeting behind Home Depot. (Doc. 12, Att. 3, Ex. A, p. 28).  Deputy Roberts' testimony at the Fourth PCRA hearing remained substantially the same as her testimony at the preliminary hearing, although she expanded on the events of that evening.  (Doc. 12, Att. 3, Ex. C).  Deputy Roberts reiterated that Mr. Dunn had turned over the revolver to police behind the Home Depot.  Id. at 15-16.  However, Deputy Roberts noted that police returned to Mr. Dunn the empty blue bag that had carried the revolver, and instructed him to pretend he was returning the revolver to Mills.  Id. at 22.

It is true that during the preliminary hearing Mr. Dunn testified that he did not turn the revolver over to police immediately during the Home Depot meeting. (Doc. 12, Att. 1, pp. 83-84).  Mr. Dunn testified that he kept the revolver, and the police did not obtain it until they detained him in front of Mills' abode later that evening.  Id.  This discrepancy in testimony is the result of several possible explanations, and it is equally likely, if not more likely, that Mr. Dunn was honestly mistaken in his recollection of the events that evening, rather than the

police committing perjury.  Mistaken recollection is hardly uncommon, and there is no indication whatsoever that the prosecution knowingly used false or perjured testimony.  Given the absence of evidence that the police willfully provided false testimony, it cannot be concluded that perjury actually occurred.

Second, the PCRA Court reviewed Mills' claim and concluded that "there is no evidence the prosecution knowingly used false testimony at the preliminary hearing." (Doc. 12, Att. 6, p. 4).  That determination is entitled to significant deference, and Mills has not provided clear and convincing evidence to the contrary.  As a result, the finding is considered correct.  Appel, 250 F.3d at 210.  As aforestated, because there is no evidence that the prosecution knowingly used false or perjured testimony at the preliminary hearing, Mills' due process rights could not have been violated.

### 2. *Withdrawn Charge*

Next, Mills urges that the prosecutor committed prosecutorial misconduct when she withdrew a firearms charge against Mills at the preliminary hearing. (Doc. 1).  Mills argues that the prosecutor violated his "basic fundamental constitutional rights" and committed perjury when she explained that the firearm charge attached to the aggravated assault information was duplicitous to the firearm charge attached to the burglary information.  Id.  Specifically, Mills alleges that the firearm charge was related to the revolver that Mr. Dunn stated he received

from Mills in October 2008; because the burglary did not occurred until December 2008, Mills argues the prosecutor knowingly lied to the court.  Id.

    Assuming that Mills' allegation could form the basis for habeas relief, none would be warranted in this instance.  Mills' contention that the firearm charge was related to the revolver that Mr. Dunn turned over to the police is erroneous.  At the plea hearing and sentencing, the prosecutor related the factual basis for every charge levied against Mills.  (Doc. 12, Att. 2, pp. 24-28).  At that time, the prosecutor stated that, during the burglary, Mills "went inside [and] stole numerous items, power tools, and handguns. And the handguns were later located where his belongings were at the place that he was staying. And he is not to possess those firearms. He's a convicted felon."  Id. at 28.  Thus, it is clear from the record that the firearms charge did in fact relate to the burglary charge, and the prosecutor did not deceive the court.

### 3. *Brady Material*

Mills also argues that the prosecution committed a Brady violation when it withheld potentially exculpatory material from the defense.  (Doc. 1).  Specifically, Mills alleges that "the defense was not made known of a deal with" Mr. Dunn in exchange for evidence and/or testimony.  Id.

In Brady v. Maryland, the United States Supreme Court held that due process requires that the prosecution disclose exculpatory evidence to a defendant.

373 U.S. 83 (1963).  Where the prosecutor fails to turn over exculpatory evidence,

"regardless of whether the omission was intentional or a product of bad faith, the

defendant is entitled to a new trial . . . provided that the withheld materials were

material to guilt or innocence or to punishment."  Marshall v. Hendricks, 307 F.3d

36, 52 (3d Cir. 2002).  This obligation extends both to impeachment evidence and

evidence known to the police.  Id. at 52-53 (citing Kyles v. Whitley, 514 U.S. 419,

439-39 (1995); Giglio v. United States, 450 U.S. 150, 154 (1972)).  "[E]vidence of

any understanding or agreement as to future prosecution" of a witness is relevant to

a witness' credibility, and therefore must be turned over to the defense.  Giglio,

450 U.S. at 154-55.

In this instance, the record supports a conclusion that no agreement was

reached between the prosecutor/police and Mr. Dunn.  The evidence presented by

the prosecution reveals that Mr. Dunn, a convicted felon, admitted to possessing a

firearm that he was not legally allowed to possess.  The evidence also establishes

that Mr. Dunn was never arrested in relation to this crime.  However, both Deputy

Staley and Deputy Roberts testified that the decision not to arrest Mr. Dunn was

solely officer discretion, and no agreement was ever made with Mr. Dunn whereby

he would provide evidence in exchange for preferential treatment.  (Doc. 12, Att.

3, Ex. A, C).  No testimony or evidence was ever elicited that would indicate any

agreement was reached with Mr. Dunn.

As such, it is evident that no agreement existed with Mr. Dunn; without an agreement, the state could not have suppressed <u>Brady</u> materials, and Mills' due process rights were not violated.  <u>See</u>, <u>United States v. Rhines</u>, 143 F.App'x 478, 484 (3d Cir. 2005) (finding that no <u>Brady</u> violation had occurred where the evidence sufficiently established that no agreement with a witness existed).  <u>See also</u>, <u>Todd v. Schomig</u>, 283 F.3d 842, 849 (7th Cir. 2002) ("Without an agreement, no evidence was suppressed and the state's conduct, not disclosing something it did not have, cannot be considered a <u>Brady</u> violation").

Even if an agreement existed, the testimony of Deputy Staley and Deputy Roberts establishes that Mr. Dunn immediately provided incriminating evidence to the police during their meeting at Home Depot, before the police made any statements to Mr. Dunn.  (Doc. 12, Att. 1, p, 26; <u>id.</u> at Att. 3, Ex. A, pp. 40-41).  As Mr. Dunn turned over the incriminating evidence immediately, there is no possibility that an agreement not to prosecute had yet been reached, and there is no evidence that Mr. Dunn was contemplating such an agreement when he turned over the evidence.  Therefore, any deal that may have existed would not have impacted Mr. Dunn's credibility, and cannot be considered <u>Brady</u> material.  <u>See</u>, <u>Marshall</u>, 307 F.3d at 56-57.

## B. Ineffective Assistance of Pretrial Counsel

Next, Mills asserts that his pretrial counsel was ineffective both for failing to review discovery prior to accepting a plea agreement, and for failing to have perjured testimony dismissed from the preliminary hearing.  (Doc. 1).  A petitioner asserting a claim of ineffective assistance of counsel in the context of plea negotiations must establish that: (1) his or her attorney's "representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."  Lafler v. Cooper, 132 S.Ct. 1376, 1384-85 (2012) (quoting, Hill v. Lockhart, 474 U.S. 52 (1985)).

Under the first prong of the test, a petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Strickland v. Washington, 466 U.S. 668, 688 (1984).  There is a strong presumption that counsel rendered adequate assistance to the petitioner, and judicial scrutiny "of counsel's performance must be highly deferential."  Id. at 689.

1. *Pretrial Issues*

Under Pennsylvania law, a guilty plea "constitutes a waiver of all nonjurisdictional defects and defenses" and results in waiver of any challenge except "the legality of [the] sentence and the validity of [the] plea."  Com. v. Jones,

593 Pa. 295, 308 (2007) (quoting <u>Com. v. Montgomery</u>, 485 Pa. 110 (1979)).  As

the United States Court of Appeals for the Third Circuit has noted

> [a guilty] plea constitute[s] an admission of [] guilt, a waiver of all
> nonjurisdictional defects and defenses, and [and admission of] all the
> facts averred in the indictment. The appellant, therefore, [cannot] be
> heard to challenge those facts in a habeas corpus proceeding.

<u>United States v. Gallagher</u>, 183 F.2d 342, 344 (3d Cir. 1950).  <u>See also</u>,

<u>Washington v. Sobina</u>, 475 F.3d 162, 165 (3d Cir. 2007).  Consequently, Mills

waived any arguments that errors occurred at the preliminary hearing stage.

Therefore any error on the part of Attorney Watt in failing to challenge witness

testimony did not cause the requisite prejudice for ineffective assistance of

counsel.[4] <u>Strickland</u>, 466 U.S. at 688.

   *2. Guilty Plea*

   Mills also argues that his counsel was ineffective for failing to review

discovery material with him prior to a guilty plea being entered.  (Doc. 1).

Specifically, Mills claims that this failure resulted in his plea being entered into

unknowingly and involuntarily.  <u>Id.</u>

   First, Mills has failed to demonstrate that Mr. Watt's performance was

deficient.  Although Mills alleges that Mr. Watt never reviewed discovery material,

---

[4] Even if Mills had not waived these issues, there is no indication that perjured testimony was
used at the preliminary hearing.  <u>See</u>, <u>supra</u>, section (A)(1). The conflicting testimony would
properly go toward the credibility of the witnesses.  As a practical matter, it would not have been
struck from the record at such a proceeding, nor would charges based upon that testimony be
dismissed. As the testimony was not perjured, Mr. Watt could not have been ineffective for
failing to strike that testimony.

Mr. Watts testified under oath that he had reviewed the discovery materials. (Doc. 12, Att. 3, pp. 78-79). The PCRA Court concluded that Mr. Watt's testimony was credible, a factual conclusion that Mills has not rebutted. Consequently, Watt's performance in reviewing the discovery material was not deficient.

Furthermore, Mills has not demonstrated that Mr. Watt's performance was deficient for failing to review discovery material with Mills before he entered a guilty plea. Mr. Watts admitted in the PCRA hearing that he did not provide Mills with the discovery materials until the day of the plea hearing, and further testified that Mills did not have an opportunity to review that material prior to entering a guilty plea. (Doc. 12, Att. 3, pp. 88-89). However, Mr. Watt testified that Mills specifically requested that the plea be entered as soon as possible. Id. Mr. Watt stated that Mills was unable to review discovery material solely because he had requested that the plea be entered immediately. Id. When viewed in that light, it cannot be said that Mr. Watt's actions, i.e. respecting the wishes of his client, fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688.

Second, and most notably, Mills makes no argument as to how Mr. Watt's alleged deficiencies prejudiced him in any way. Notably, Mills has never alleged that, had he been provided with discovery prior to the plea hearing, *he would not have pled guilty to the charges*. See, docs. 1, 17. Such a finding is a prerequisite for granting habeas relief. Lafler, 132 S.Ct. at 1384-85. Furthermore, Mills has

not stated what, if any, information contained within the discovery files would have aided in his decision to plead guilty.  Although Mills argues that "fabricated" and "perjured" testimony was offered by the prosecution, any inconsistencies in testimony were readily apparent at the preliminary hearing, and discovery shed no further light on these discrepancies.  Similarly, while Mills claims that Mr. Dunn was offered a deal in exchange for his testimony, no evidence related to a purported agreement existed in the discovery materials.  Simply stated, Mills is grabbing at proverbial straws.

Additionally, at the plea hearing Mills related that he was satisfied with Watt's representation, and that his attorney had been available to answer any questions he had.  (Doc. 12, Att. 2, p. 15).  He made no complaint of the fact that he had not been able to review discovery materials prior to entering a plea.  The Court asked Mills if he believed that entering a guilty plea was in his best interests, to which Mills replied "[y]es, I do."  Id. at 18.  The prosecution set forth the factual allegations for all crimes charged, and Mills agreed that he had committed the crimes charged.  Id. at 19, 24-28.  As Mills has failed to show how his plea hearing would have proceeded any differently had he reviewed discovery materials, and as he has failed to demonstrate, much less assert, that he would not have pled guilty had his attorney provided discovery prior to the plea hearing, he has not

established prejudice from his attorney's performance.  Therefore, his claim for

ineffective assistance of counsel must fail.  <u>Lafler</u>, 132 S.Ct. at 1384-85.

## C. Ineffective Assistance of PCRA Counsel

Finally, Mills alleges that all three of his attorneys in the PCRA proceedings

were ineffective.  (Doc. 1, 17).  28 U.S.C. §2254(i) provides that "[t]he

ineffectiveness or incompetence of counsel during Federal or State collateral post-

conviction proceedings shall not be a ground for relief in a proceeding arising

under section 2254."  As a result, Mills' claims that he was denied effective

assistance of counsel in his PCRA proceedings is not cognizable under Section

2254, and must be dismissed.

## D. Certificate of Appealability

Under the AEDPA, a court may not issue a certificate of appealability

"unless 'the applicant has made a substantial showing of the denial of a

constitutional right.'"  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483 (2000) (quoting 28

U.S.C. 2253(c)).  Thus, the "petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or

wrong." <u>Id.</u> at 484.

When a district court "denies a habeas petition on procedural grounds

without reaching the prisoner's underlying constitutional claim," a certificate of

appealability should be issued if "jurists of reason" would find that: (1) it is

24

debatable whether the petition states a valid claim for the denial of a constitutional right, and (2) it is debatable whether the district court was correct in its procedural ruling.  Id.

Claims two and three of Mills' habeas petition raise claims of ineffective assistance of PCRA counsel.  (Doc. 1).  The plain language of 28 U.S.C. §2254(i) excludes such claims from habeas review, and therefore jurists of reason could not find it debatable that this Court does not have jurisdiction to consider such claims. Furthermore, Mills has not made a substantial showing of the denial of a constitutional right as to claims one and four.  As a result, a certificate of appealability will not be issued.

## IV.   Conclusion

A review of the record reveals that Mills did not receive ineffective assistance of counsel, and there was no denial of due process rights as a result of prosecutorial misconduct or Brady violations.  Furthermore, challenges to the effectiveness of PCRA counsel are not cognizable in a Section 2254 habeas petition.  The petition will therefore be dismissed in part and denied in part.

An appropriate Order will be entered.